1817.

The Commonwealth *ex rel.* RUFF and FISHER *v.* The Commissioners of Philadelphia County.

STEELE *against* BENNET.

IN ERROR.

*Philadelphia.*

*Monday,* December 29.

ERROR to the District Court of the city and county of *Philadelphia.*

The plaintiff in error, *John Steele,* (defendant below,) was collector of the port of *Philadelphia,* and in that capacity, recovered the amount of a forfeiture, directed by the act of Congress, under which it was recovered, (1st *March,* 1809,) to be distributed in the manner prescribed by the 9th section of the act of Congress, passed 2d *March,* 1799, to regulate the collection of duties on imports and tonnage. *Christopher L. Bennet,* the plaintiff below, was captain of a revenue cutter, and had given to the defendant, the information upon which the forfeiture was recovered. This suit was brought to recover a proportion of the forfeiture.

Under the act of Congress, of 2d March, 1799, the officers of a revenue cutter, are entitled to a proportion of the forfeitures recovered, in consequence of information given by an officer of such cutter, whether such information was obtained while engaged in the appropriate duties of an officer, or otherwise.

On the trial in the Court below, the defendant contended, that the plaintiff was not entitled to any proportion of the forfeiture, because the information was not acquired by the defendant, while acting in the capacity of captain on board his vessel, or in boarding and searching other vessels, but was acquired on shore. But the Court below charged the jury, that it made no difference when or where the information was obtained, if it was while the plaintiff continued captain; and that he was entitled to recover. The defendant excepted to the charge of the Court.

VOL. III.—4 A

*C. J. Ingersoll,* for the plaintiff in error.

*Ingersoll,* contra.

TILGHMAN C. J. delivered no opinion, not having heard the argument.

GIBSON J. The duties of an officer of a revenue cutter, include every act that he is bound to do, as incident to his station. They are explicitly pointed out by the 99th section of the act of Congress, regulating the collection of duties on imports and tonnage, passed the 2d *March,* 1799. Whatever may be his duties towards the government, as a citizen, he is not bound as an officer, to do any thing that is not enjoined on him by legal authority. I cannot, therefore, perceive the propriety of dividing his services into appropriate, and extraordinary. His official duties are his appropriate duties, and comprehend every thing that is at all a matter of duty. For his services, he receives a monthly stipulated reward, whether they be performed with vigilance or not. It is not to excite alacrity in the discharge of his official duty, but as a reward for the performance of something that is not a duty, that in certain cases, he is allowed to receive a portion of the forfeiture, under the embargo laws. I am at a loss to know, what official concern the officers of the cutter could at any time have had with the *Tickler,* except to visit her before she left the *Capes,* and see whether she had a regular clearance, or permit, or was sailing in violation of the embargo. In *December,* 1808, the *Tickler* was loaded with flour, and having given the requisite bond to the collector of the district, she obtained a regular clearance from the port of *Philadelphia* to *New Orleans.* On the 29th of the same month, she was boarded by the plaintiff from the revenue cutter in the *Delaware,* and suffered to proceed. Instead of *New Orleans,* she went to *Saint Jago de Cuba,* and thereby forfeited her bond. In this case, no forfeiture accrued, until after the officers of the cutter were *functi officio,* as to this vessel, and she had got beyond their sphere of action. Besides, there was no breach of the embargo laws ; the *Tickler* had strictly complied with every thing they required, up to the time of her sailing, and by going to a foreign port, she did not incur a penalty imposed by law, but

one arising from a breach of contract with the government. If, therefore, a portion of the forfeiture were given, to excite vigilance in the execution of official duty, it would be impossible for the officers of a cutter to come in at all in their official capacity; for I know not how they could, in this instance, have come to a knowledge of the forfeiture of the bond, in a course of official duty. It surely must have been the intention of Congress, in providing that forfeitures, under the embargo laws, should be distributed in the same manner as those arising under the revenue laws, to reward the officers of the revenue cutters, as well as the other officers of the government, for discovering those violations of the embargo. But this provision will have a very limited operation, indeed, if it be confined to cases of official detection, which can occur in only one case, to wit, that of sailing without a clearance. I am inclined to construe these laws benignly, in favour of those active in rendering the government a service. The interest in the forfeiture, is given as a reward for the discovery; and it cannot be at all material to the government, whether that discovery were made, while acting in the capacity of captain of the cutter, on board of his vessel, or made on shore. By what right does the defendant claim a part of this forfeiture? Merely by virtue of the positive provisions of the acts of Congress, and not because he has done any thing in the character of a collector. His official duties do not, as far as I can discover, extend to this case. The naval officer of the district, and surveyor of the port, are also entitled to a part of the penalty, in cases where they have no concern, official, or otherwise, with the information that led to a recovery of the penalty. By the letter of the act, the plaintiff is entitled; and I cannot agree to give a construction against the letter, on a mere conjecture respecting the motive of Congress, in distributing the penalty as they have done. It may appear capricious in Congress, to have allowed a greater reward to an officer of a cutter, merely because he was such, than to a private citizen, for the performance of a matter, that was no further obligatory on the officer than on the citizen; yet it is more unreasonable, that persons having no claim on the score of service, should participate; and of the right of such persons, there can be no doubt. I am, therefore, of opinion, that the judgment be affirmed.

1817.

STEELE
v.
BENNET.

DUNCAN J. The defendant in error, a captain of a revenue cutter in the service of the *United States*, claims a certain portion of a forfeiture incurred under the act of Congress of 1st *March*, 1809, interdicting commercial intercourse between the *United States* and *Great Britain* and *France*, and their dependencies. He founds his claim on the 18th section of that act, which directs that all penalties and forfeitures arising or incurred, shall be distributed and accounted for in the manner prescribed by the act of 2d *March*, 1799 ; an act regulating the collection of duties on imports and tonnage. The 9th section of that act, distributes forfeitures, &c. thus : one moiety for the use of the *United States*, and the other to be divided in equal proportions to the collector and naval officer of the district and surveyor of the port. This includes all cases of forfeitures, where the penalty or forfeiture is received through the medium of these officers without information from others. But as their vigilance would not in all cases be competent to the detection of all breaches of the revenue law, Congress deemed it proper to offer a reward, in all cases where the penalties, fines and forfeitures might be recovered in pursuance of information given to such collector, by any person other than the naval officer or surveyor, to such informer ; made a different distribution of the moiety allowed for such discovery ; one-half of such moiety to the collector, naval officer, and surveyor, and the other half to such informer. But it seemed proper to them still to make further provision ; and they have enacted, that where any fines, forfeitures, and penalties incurred, are recovered in consequence of any information given by any officer of a revenue cutter, it shall be disposed of, one-fourth part to the *United States*, one-fourth to the officers of the customs, and the remainder to the officers of such cutter, to be divided among them agreeably to their pay. There is no obscurity in this appropriation. Ingenuity cannot devise ambiguity from the language used.

In the 1st class of distribution, *United States*,   one-half.
Custom-house officers,   -   -   -   one-half.
In the 2d class, where others than the custom-house officers, or officers of revenue cutters, are informers,—*United States*,   one-half.
Custom-house officers,   -   -   -   one-fourth.
Informer, -   -   -   -   -   -   one-fourth.

In the 3d class, where the officer of a cutter is the informer,

| | |
|---|---|
| Officers of cutter, - - - - | one-fourth. |
| *United States*, - - - - - | one-half. |
| Custom-house officers, - - - | one-fourth. |

The result is, that where the information comes from a custom-house officer, they get one-half. Where, from the information of any one officer of a cutter, or other person, they get one-fourth. So that the allowance of the officers of the revenue cutter, does not diminish the portion of the custom-house officers, but the extra allowance is made up, by a subtraction from the portion of the *United States;* and as the allowance of the officers of the cutter is to be divided amongst them, it seems a fair and equitable distribution of the forfeitures. It prevents collusion between the officers of the revenue cutters, by placing the allowance on the same footing as their pay. It throws out of the rank of a common informer, these officers, and places them in another rank. I cannot see, why these officers should be excluded from the benefit conferred on all other informers. For the fixed duties of their station, they have a fixed salary; for any *ex officio* information, it is difficult to find a principle, either in reason or good policy, for excluding them. The law draws no line of distinction between the information they may acquire, while in the actual discharge of their stated duties, and other information at other times and places, and whatever their situation may be, when they possess themselves of this information ; and, in fact, the officer may be, and from necessity would often be, excluded from all share of the forfeiture, where the breach of the law falls within his own view ; for in that case, the *United States* may stand in need of his testimony ; in which case, he is compelled to testify, and relinquish the part to which he would otherwise be entitled. All acts of Congress, relative to provision to revenue cutters, make the same distinction in the same words. As in the act of 6th *May*, 1796, there is but one provision made, where forfeitures are incurred, and have been recovered, in consequence of any information given by any officer of a revenue cutter. The officers of the revenue cutter, obtain nothing for such information, unless they obtain it under this provision. The provision embraces all cases of information by them. Where any fines, forfeitures, and penalties, incurred by virtue of this act, are recovered, in

consequence of any information given by any revenue cutter, it shall be disposed of as follows, &c. It is not for this Court to inquire into the motives of Congress, or on the policy and expediency of this allowance; for like most questions of policy, it has two sides, and gentlemen of intelligence, can press with equal plausibility, the reasons for the one policy and for the other, as has been done in this case.

Rewards to informers, form a necessary ingredient in all revenue laws. It is a stimulus both to the officer, and to the private citizen. Were it permitted the Court, to indulge in these speculations, for myself I can only say, that I do not discover, that good policy requires the excluding from participation in the fruits of their information, these officers, but that, as they, from the very nature of the occupation, would more readily acquire information than any other class of men, so they should receive the reward of such information as produces a conviction, however or whenever this information was acquired. But, whatever opinion may be entertained of the policy of this allowance, it is sufficient for me, that Congress have made it in the most comprehensive terms our language will admit of. I do not feel disposed to cut it down, on any reason of policy or expediency. Nor can I conceive it the duty of the Court, to restrict it by any narrow construction, not justified by the extensive terms in which the *United States* have been pleased to confer the bounty on this class of officers.

The question whether the forfeiture was recovered, in consequence of any information given by the plaintiff, was a fact properly left to the jury.

I am of opinion, that there is no error in the charge of the Court, and that judgment be affirmed.

Judgment affirmed.